CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 01 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL E. TORY, SR., | |
| Plaintiff, | Civil Action No. 7:18cv00393 |
| v. | **MEMORANDUM OPINION** |
| WARDEN CLINT D. DAVIS, et al., | By: Jackson L. Kiser |
| | Senior United States District Judge |
| Defendants. | |

Michael E. Tory, Sr., a Virginia inmate proceeding pro se, filed this civil action pursuant to 42 U.S.C § 1983, against the Commonwealth of Virginia as well as officials at Keen Mountain Correctional Center ("Keen Mountain") and the Virginia Department of Corrections ("VDOC"). Tory alleges that the defendants violated his rights to free speech and due process, as well as those under the Virginia Tort Claims Act ("VTCA"). This matter is before me on defendants' motion to dismiss. For the reasons stated herein, I will grant in part and deny in part defendants' motion to dismiss.

I.

Tory alleges that on April 8, 2018, he learned that his sister had emailed him two different images that he never received. One image was sent on March 8, 2018, and depicted a woman in a swimsuit. The second image was sent on April 5, 2018, and depicted a woman in a swimsuit with a tattoo on her thigh. Both images were sent via the VDOC's email system, JPay. Neither Tory nor his sister received notice that the images had been rejected, censored, or deleted. Tory filed informal complaints concerning each of the images. In response, defendant Lt. Mitchell advised Tory that the images "did not comply with content

requirements" and had been returned to the sender via JPay. Lt. Mitchell also advised Tory that VDOC policy requires that Tory receive electronic notification on his media device regarding censorship of the attachment.[1]

On July 20, 2018, Tory learned that another image had been sent to him through JPay that he never received. He again did not receive notice that the image had been rejected, censored, or deleted. Tory filed a "trouble ticket" with JPay asking about the missing image, and staff at JPay responded, advising Tory that the email had been delivered successfully. Tory then filed an informal complaint at Keen Mountain, and defendant Intelligence Officer McGlothlin responded that the attachment had been discarded because it contained swimwear. Pursuant to the VDOC's Operating Procedure ("OP") 803.1(VIII)(A)(3), all images sent to inmates by email are treated as personal and may not include nudity or semi-nudity of any person. Semi-nudity includes persons in underwear, lingerie, and swimwear.

Tory argues that the defendants violated the First Amendment by denying him the images by email, the policy that does not allow semi-nude images by email is unconstitutional, and the defendants denied him due process by failing to notify him that the images had been rejected.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[1] Lt. Mitchell gave that response to the informal complaint of one of the images and referred Tory to that response concerning the informal complaint of the other image.

defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly

3

appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Tory alleges that the VDOC's policy of not allowing semi-nude images by email is unconstitutional on its face and also as it was applied to the three images that were sent to him. Inmates clearly retain protections afforded by the First Amendment, but those rights must be balanced with prisons' institutional needs of security, discipline, and general administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). Thus, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of [the] [right] or whether they were able to participate . . . other[wise] . . .; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

4

Id. at 200 (citing Turner, 482 U.S. at 89-92); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (discussing burdens).

OP 803.1(VIII)(A)(3) states that, "[a]ll pictures and photographs sent to offenders through secure messaging will be treated as personal and must comply with the requirements governing content established in this operating procedure for personal pictures and photographs to include prohibition of nude or semi-nude personal photographs or pictures of any person. Semi-nude shall include but is not limited to persons in diapers, underwear, lingerie, or swimwear." Semi-nude images are permitted by regular mail when sent by a commercial vendor, however.

Tory argues that the policy of prohibiting semi-nude images by email while, at the same time, allowing them by regular mail is not rationally related to any penological objective. Tory further argues that prohibiting the emailed images does not maintain security, discipline, or good order in the prison and does not assist with rehabilitation and treatment objectives, reduce sexual harassment, or prevent a hostile environment for offenders, staff, and volunteers, because the same and/or very similar images are permitted by regular mail. In addition, Tory argues that it is easier for inmates to steal, barter, or sell physical images received by mail than it would be to do the same with emailed images that are not transferrable from their personal media devices. Tory also argues that allowing semi-nude images by email would have "little, if any," impact on guards, other inmates, or the allocation of prison resources. Finally, Tory argues that an easy alternative would be for the defendants to treat emailed images the same way they treat those which arrive at the facility through regular mail. Accepting Tory's factual allegations as true and drawing all reasonable inferences in Tory's

5

favor, I conclude that Tory has stated a plausible First Amendment claim. Accordingly, I will deny defendants' motion to dismiss this claim.

In considering a challenge to a policy as applied, the court "consider[s] whether a ban on <u>these particular items</u> is reasonably related to a legitimate penological objective." <u>Maday v. Dooley</u>, No. 4:17-CV-04168-KES, 2019 U.S. Dist. LEXIS 167951, at *52-53 (D.S.D. Sep. 30, 2019) (quoting <u>Murchison v. Rogers</u>, 779 F.3d 882, 887 (8th Cir. 2015) (internal quotation omitted) (emphasis in original)). "Prison officials have broad discretion to censor or restrict an inmate's receipt of a publication to serve a legitimate penological interest." <u>Id.</u> The court must conduct an independent review of the evidence to determine whether defendants' decision to apply the regulation and withhold these images was an "'exaggerated response to prison concerns' and therefore unconstitutional as applied." <u>Kaden v. Slykhuis</u>, 651 F.3d 966, 969 (8th Cir. 2011) (quoting <u>Williams v. Brimeyer</u>, 116 F.3d 351, 354 (8th Cir. 1997)). In order for me to assess this claim, discovery will be needed to understand the images' contents to properly weigh the <u>Turner</u> factors. See, e.g., <u>Ingle v. Yelton</u>, 439 F.3d 191, 196-97 (4th Cir. 2006). Accordingly, I will deny defendants' motion to dismiss Tory's as-applied challenge.

**IV.**

Tory alleges that the defendants violated his right to due process when they failed to notify him on each occasion that his incoming email images were censored and rejected. To state a procedural due process violation, "a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." <u>Prieto v. Clarke</u>, 780 F.3d 245, 248 (4th Cir. 2015). The Supreme Court has explained that "[t]he interest of prisoners and their correspondents in uncensored communication by letter,

6

grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." Procunier v. Martinez, 416 U.S. 396, 417 (1974), overruled on other grounds by, Thornburgh v. Abbott, 490 U.S. 401 (1989). As a result, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." Id. In Procunier, "[t]he Court approved a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision, concluding such requirements 'do not appear to be unduly burdensome.'" Bonner v. Outlaw, 552 F.3d 673, 676 (8th Cir. 2009) (citing Procunier, 416 U.S. at 417).

> In Bonner, the Eighth Circuit explained that:
>
> the reasoning of Procunier applies to all forms of correspondence addressed to an inmate. It is the inmate's interest in "uncensored communication" that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc. Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected.

Bonner, 552 F.3d at 677. Accordingly, an inmate has a due process right to receive notice when his email communication has been censored. Id. (citing Ping v. Raleigh, No. 98-2739, 2000 U.S. App. LEXIS 795, 2000 WL 59539, at *1 (8th Cir. Jan. 24, 2000) (due process rights apply to rejection of "play-by-mail games"); Montcalm Pub'g Corp. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996) (due process rights apply to rejection of subscription magazines); Hopkins v. Collins, 548 F.2d 503, 504 (4th Cir. 1977) (holding due process rights apply to rejection of newspapers); Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (due process rights apply to rejection of law journal); and Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004) (due

7

process rights apply to rejection of newspapers)). Here, Tory alleges that he did not receive any such notice. Accepting Tory's factual allegations in the complaint as true and drawing all reasonable inferences in Tory's favor, I conclude that Tory has stated a plausible due process claim. Accordingly, I will deny defendants' motion to dismiss Tory's due process claim.

## V.

Tory names the Commonwealth of Virginia as a defendant. The Eleventh Amendment to the U.S. Constitution provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, based on principles of sovereign immunity, "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." Lee-Thomas v. Prince George's Cty. Pub. Sch., 666 F.3d 244, 248 (4th Cir. 2012); see also Bd. Of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) ("[T]he ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court."). Further, Tory cannot seek relief from the Commonwealth under the VTCA in this court. Although the Commonwealth enacted the VTCA and allowed itself to be sued for negligence claims filed in state courts, it has not waived its Eleventh Amendment immunity and has not consented to be sued in federal courts. McConnell v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987). This is true even where a claim like a VTCA claim would otherwise fall within the court's supplemental jurisdiction. Creed v. Virginia, 596 F. Supp. 2d 930, 938 (E.D. Va. 2009). Accordingly, I conclude that the

Commonwealth is entitled to Eleventh Amendment immunity and will grant defendants' motion to dismiss Tory's claims against the Commonwealth.[2]

## VI.

For the reasons stated herein, I will grant in part and deny in part defendants' motion to dismiss. Pursuant to Standing Order 2019-5, I will give the remaining defendants the opportunity to file a motion for summary judgment as to these claims.

**ENTERED** this 1st day of June, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Furthermore, under the plain language of the VTCA, such claims may only be maintained against the Commonwealth, not against individual state officers. See Va. Code § 8.01-195.1. Therefore, Tory's VTCA claim is not viable against any of the individual defendants, either. Accordingly, I will dismiss the VTCA claim against all of the defendants.