IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL E. TORY, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) Civil Action No. 7:18cv393 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **CLINT D. DAVIS, *et al.*,** | ) By:  **Hon. Thomas T. Cullen** |
| | ) **United States District Judge** |
| **Defendants.** | ) |

Plaintiff Michael E. Tory, Sr., a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against seven administrators and correctional officers[1] alleging violations of his First and Fourteenth Amendment rights under the U.S. Constitution. This matter is before the court on the parties' cross motions for summary judgment. After reviewing the record, the court concludes that Tory failed to exhaust his remedies on some of his claims and lacks standing to bring suit on his other claim. Accordingly, the court will grant Defendants' motion for summary judgment, dismiss the remaining claim for lack of standing, and deny Tory's motion for summary judgment as moot.

I.

On March 8, 2018, while he was housed at Keen Mountain Correction Center ("Keen Mountain"), Tory alleges he was sent a "snap-and-send" image of a woman wearing a swimsuit

---

[1] Plaintiff names Keen Mountain Warden Clint D. Davis, Regional Administrator Marcus Elam, Lieutenant B. Mitchell, Intel Officer McGlothin, Intel Officer W. Howard, and Director of the Virginia Department of Corrections Harold W. Clarke as defendants (collectively, "Defendants"). The Commonwealth of Virginia was terminated as a defendant on June 1, 2020. (*See* ECF No. 89).

on his JPay device.[2] Tory alleges he was sent a similar image on April 5, 2018. Tory claims he did not receive these images as they were "rejected, censored, or deleted." He also claims that he initiated grievances related to these incidents, but never received a response explaining why the images were withheld. Defendant Lieutenant Mitchell allegedly responded to one of Tory's informal grievances and told Tory that the images "did not comply with the content requirements" and that the attachments were returned to the sender. Tory alleges that Lieutenant Mitchell responded: "Policy mandates you receive electronic notification on your media devi[c]e regarding the censorship of the attachment." Tory claims he "was never given an opportunity to appeal the decision to withhold the photos."

Tory asserts that he did not receive any notices regarding the rejection of the images. Tory filed three informal complaints and one formal grievance related to the rejection of the e-mailed images. On April 9, 2018, Tory filed an informal complaint related to an image sent on March 8, 2019 ("Informal Complaint One"). Tory did not file a formal grievance related to Informal Complaint One.

On April 9, 2018, Tory filed an informal complaint related to an image allegedly sent on April 5, 2018 ("Informal Complaint Two"). The formal grievance for Informal Complaint Two was initially refused by the grievance coordinator as untimely, but the Regional Ombudsman overturned this decision. In the Level 1 response to Informal Complaint Two, Defendant Warden Davis stated that Tory's account "does not reflect any rejection(s) on

---

[2] "JPay is a small, touch-screen electronic device, like a tablet or iPad, which allows inmates to communicate with family and friends. JPay devices are specifically designed to operate within prisons and allow inmates to send and receive secured messages similar to how the public would with email messages, including text-based messages and photographs that can be stored on the device." *Strebe v. Kanode*, No. 7:17cv00321, 2018 WL 4473117, at *2 (W.D. Va. Sept. 18, 2018).

[April 5, 2018,] or any date close to it. If there are not any rejections, there cannot be any notifications sent[.]" Warden Davis allegedly indicated that Keen Mountain is "not responsible for the electronic notifications of rejections," and that Tory was able to file a grievance. Tory filed an appeal and received a Level II response upholding the rejection.

On July 12, 2018, Tory was transferred to River North Correctional Center ("River North"). That same day, he was sent an email with a missing attachment. Tory filed an undated informal complaint related to the image sent on July 12, 2018 ("Informal Complaint Three"), complaining he "was never notified" when "the attachment was taken[.]" Tory asserts that Defendant Intel Officer McGlothlin responded to Informal Complaint Three and told Tory that the attachment was discarded "due to containing swimwear." Tory did not file a regular grievance related to Informal Complaint Three.

Tory filed a civil complaint in this court on August 9, 2018,[3] seeking damages of $1,550 and "[a]ll costs and expenses incurred with the filling of this action." Tory also seeks injunctive relief in the form of retrieval of the images and "an effective means of notification and appeal of censorship decisions[.]" Tory requests the court declare that "Operating Procedure 803.1 Section (VIII)(C)(8) is unconstitutional on its face and/or unconstitutional as applied and enjoin defendants from enforcing this subsection of the policy[.]" On March 11, 2020, Tory filed a motion for summary judgment (ECF No. 85). On September 1, 2020, Defendants filed a motion for summary judgment. (ECF No. 104). The court has reviewed the pleadings, relevant evidence, and applicable law, making this matter ripe for decision.

---

[3] Tory has since filed several amendments and corrections to his original complaint. (*See* ECF. No. 1). The facts between these amended and corrected complaints remain largely unchanged and primarily add additional defendants.

## II.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993)

(finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

In his complaint and filings with the court, Tory asserts that he did not receive any notice regarding the withheld images and was not permitted to appeal the censorship before being "permanently deprived of the photographs." Tory claims that the actions by the Defendants regarding these images deprived him of his First and Fourteenth Amendment rights. Tory claims that the deprivation caused by the policy outlined in the applicable policies is "unconstitutional on its face and unconstitutional as applied." He points to Virginia Department of Corrections Operating Procedure ("OP") 803.1, Section VIII (C)(8),[4] which prohibits "nude or semi-nude" personal images. Under the policy, semi-nude images "include but is not limited to persons in diapers, underwear, lingerie, or swimwear." Tory claims this policy is unconstitutional because it is overly broad and deprives prisoners of due process. He points to several examples of images which would violate this policy, such as the Sistine Chapel and the flag of Virginia, which "depicts an image of a female with an exposed breast." Tory asserts that the criteria do not adequately accommodate the high variation in the degree of "sexually suggestive" nature of images from innocent to explicit. Tory claims that the images in questions are not "personal" to him as they are "available on the Internet" and "were meant

---

[4] Prior to April 1, 2018, the policy regarding images was OP 803.1 Section VIII(A)(3). After April 1, 2018, the subsection was changed to OP 803.1 VIII(C)(8). The text of the policy did not change when the subsection was changed.

for public distribution." Tory further asserts that the Commonwealth of Virginia willfully and intentionally destroyed his property by disposing of the images

## A.

Defendants assert they are entitled to summary judgment on the claims from Informal Complaint One and Informal Complaint Three because Tory failed to exhaust his available administrative remedies prior to filing suit, as is required by 42 U.S.C. § 1997e(a). The court agrees and will grant Defendants' motion for summary judgment on the claims arising from Informal Complaints One and Three.

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. §1997e(a)). The exhaustion requirement of §1997e(a) applies to "all inmate suits" whether or not the form of relief sought is available through exhaustion of administrative remedies. *Id.* An inmate must follow all steps of the established administrative procedure that the state provides and meet all deadlines of that procedure before filing a §1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). An inmate's failure to follow the required procedures of the prison's administrative remedy process—including time limits—or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id.* at 90.

But the court is also "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725. "The benefits of proper exhaustion are only realized if the prison grievance system is given a fair opportunity to consider the grievance which will not occur unless the grievant complies with the system's critical procedural rules." *Miles v. Taylor*, No. 1:16CV602 (LMB/JFA), 2016 WL 8261717, at *1 (E.D. Va. July 5, 2016) (internal quotations omitted) (citing *Woodford*, 548 U.S. at 95), *aff'd* 670 F. App'x 79 (4th Cir. 2016).

**B.**

In support of the Defendants' motion for summary judgment, Chief of Operations for the Virginia Department of Corrections ("VDOC") A. David Robinson, Keen Mountain Grievance Coordinator K. Breeding, and Keen Mountain Intel Officer A. McGlothlin each provided affidavits. These affidavits were accompanied by the VDOC Offender Grievance Procedure, OP 866.1, and Tory's grievance records related to the claims he now asserts. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The grievance process provides correctional staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his grievance informally. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint process. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender

information management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance and must attach the informal complaint to demonstrate they have grieved informally first. In the event that there is no response to an informal complaint within 15 days of the informal complaint being logged, the inmate may file a regular grievance and must attach the receipt of the informal complaint as documentation of his attempt to resolve the issue informally.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and a receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, officials must return it to the inmate within two working days, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review.

## C.

Tory filed informal complaints—Informal Complaint One and Informal Complaint Three—following the rejection of e-mailed images.[5] Defendants assert that both of these informal complaints were responded to by officials within the required time and Tory did not submit regular grievances following the denial or rejection of these informal complaints. Tory does not dispute that he failed to file a regular grievance, and he does not allege that he was prevented from filing regular grievances after receiving responses to these informal complaints. This is fatal to his claims. A prisoner cannot bring a civil action unless he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. §1997e(a)). Tory failed to exhaust his administrative remedies as to the claims arising in Informal Complaints One and Three prior to filing this suit, and he has not alleged any facts to dispute or overcome this. The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). The court concludes that Defendants are entitled to summary judgment as a matter of law as to the claims arising on these dates because it is

---

[5] Informal complaints fulfill the exhaustion requirement under the narrow circumstance when they are "the only administrative remedy available." *Carr v. Hazelwood*, No. CIV.A.7:07CV00001, 2008 WL 4556607, at *6 (W.D. Va. Oct. 8, 2008), report and recommendation adopted, No. 7:07CV00001, 2008 WL 4831710 (W.D. Va. Nov. 3, 2008). When formal remedies are available, a plaintiff is "required to grieve formally if he wishe[s] to later maintain a suit." *Graham v. Cty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 741 (E.D. Va. 2009); *Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011). Tory's informal complaints were not his only available administrative remedy and, therefore, do not qualify as fully exhausted administrative remedies.

undisputed that Tory failed to exhaust available administrative remedies as to these claims. Accordingly, only Tory's claims arising from Informal Complaint Two remains.[6]

## IV.

After independently reviewing Tory's standing to bring this suit, the court concludes that Tory lacks the necessary standing to bring his claims regarding Informal Complaint Two.

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (cleaned up). The doctrine of standing contains three essential requirements: (1) the plaintiff must have suffered an invasion of a legally protected interest; (2) there must be a causal link between the injury and the conduct complained of such that the injury is fairly traceable to the actions of the defendant; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements. *Id.* at 561. "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations [which are sufficient at the pleading stage], but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* (citing Fed. R. Civ. P. 56(e)).

The party invoking federal jurisdiction bears the burden of showing standing by establishing that he suffered a "concrete injury" of a legally protected interest. *Id.* at 572–76.

---

[6] Defendants do not contest that Tory exhausted his remedies related to his allegations from Informal Complaint Two.

A plaintiff's failure to demonstrate that he suffered an injury in fact is fatal to his claim. *Id.* at 568, 578 (finding the respondents lacked standing for "failing to show injury"); *see also Gilles v. Torgersen*, 71 F.3d 497, 500 (4th Cir. 1995) (quoting *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982) ("To establish standing, plaintiffs must "show 'injury in fact' resulting from the action which they seek to have the court adjudicate.") The injury suffered must be "personal" to the plaintiff; an "abstract" or "hypothetical" injury will not suffice. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014) (addressing a different form of standing—"prudential standing"—that is not relevant here).

Defendants deny that any images were rejected on April 5, 2018, and state that the sole email Tory received in April of 2018 was approved. This is also reflected in the Level I response and confirmed by Defendant Officer McGlothlin's affidavit.[7] Tory has not offered anything beyond a bare assertion that he was sent an image on April 5, 2018, and that the image was allegedly censored. At the summary judgment phase the plaintiff "must set forth by affidavit or other evidence specific facts" to establish standing; mere allegations are not sufficient. *Lujan*, 504 U.S. at 560–61. As Tory has not offered any competent evidence to establish that he suffered a concrete and particularized injury on April 5, 2018, he has failed

---

[7] The court may rely upon affidavits in determining whether there is standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 234 (1990) (relying upon affidavits in determining there was a lack of standing), *abrogated on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004); *see also Levin v. S.C. Dep't of Health & Hum. Servs.*, No. CA 3:12-CV-0007-JFA, 2015 WL 4545931, at *8 (D.S.C. July 28, 2015) (considering evidence not in the complaint in determining whether there was standing).

to establish standing to pursue his claims related to an allegedly censored email attachment on that date.[8] As Tory does not have standing, the court must dismiss his remaining claims.

## V.

For the reasons discussed, the court will grant the Defendants' motion for summary judgment, dismiss the remaining claims for lack of standing, and deny Tory's motion for summary judgment as moot.

The clerk shall send a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 30th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Insofar as Tory moves for summary judgement, his motion is denied as moot. The court's decision to dismiss the plaintiff's complaint renders moot the other motions filed by the parties *See, e.g., Dudley v. EXP, Inc.*, No. 7:14CV00459, 2014 WL 5810485, at *4 (W.D. Va. Nov. 7, 2014) (citing *Field v. GMAC LLC*, 660 F.Supp.2d 679, 692 (E.D. Va. 2008)). Moreover, he has not shown that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).