CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

July 08, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MICHAEL E. TORY, ) | |
|     Plaintiff, ) | Civil Action No. 7:18cv00393 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| CLINT D. DAVIS, et al., ) | By: Robert S. Ballou |
|     Defendants. ) | United States District Judge |

Plaintiff Michael E. Tory, a Virginia inmate proceeding *pro se*, has filed this action pursuant to 28 U.S.C. § 1983, alleging violations of his First Amendment rights and his Fourteenth Amendment due process rights on March 8, April 5, and July 12, 2018. Another judge of this court previously granted summary judgment to the defendants, finding that no picture was confiscated on April 5 and that Tory had failed to exhaust his remedies for the other two dates. The Fourth Circuit Court of Appeals reversed that judgment, finding that material issues of fact remained in dispute, such that summary judgment was not appropriate on these issues, and remanded to this court for further proceedings. Plaintiff has now filed a Motion for Summary Judgment, and the defendants have filed a Second Motion for Summary Judgment, both of which are ripe for determination. For the reasons stated below, I will deny the plaintiff's Motion for Summary Judgment, and I will deny in part and grant in part the defendants' Motion.

## I. FACTUAL BACKGROUND

This case involves electronic correspondence sent to Tory via secure electronic messaging while he was incarcerated at Keen Mountain Correctional Center. Tory alleges that he learned during a phone call on or about April 7, 2018, that his sister, Tea Redmond, had sent him snap and send photos on March 8 and April 5. Tory states he never received the pictures, nor did he receive notice that the pictures had been rejected, as required by Operating Procedure (O.P.)

803.1, section VIII(C)(6)(a), which deprived him of the chance to appeal the rejections in a timely manner.

On April 8, 2018, Tory filed a separate informal complaint regarding the lack of notice about each rejected photo, KMCC-18-INF-00562 for the March 8 photo and KMCC-18-INF-00563 for the April 5 photo. Lt. Mitchell responded to both complaints on April 10, 2018. Regarding the March 8 picture, he stated:

> The snap N send in question did not comply with the content requirements. The attachment was returned to sender via JPay. Policy mandates you receive electronic notification on your media device regarding the censorship of the attachment. The following information is being provided per policy regarding the attachment:
> Letter ID – JPMSL 391356084
> Date of rejection – 3-8-18 and Customer ID – 10009824

Ex. 1, p.8 to Pl's Mot. Am. Compl., ECF No. 43-1 at 8. In responding to the second complaint, Mitchell simply stated, "This issue was addressed in your prior informal complaint # KMCC-18-INF-00562. Please see my response to that complaint as it is relevant to this complaint." *Id.* at 6.

Tory then filed a grievance for each picture, but the grievances were rejected as untimely. Tory appealed the intake denial to the Regional Ombudsman, who upheld the denial of untimeliness on the grievance for the March 8 picture but reversed the denial of the grievance regarding the April 5 picture. *Id.* at 5, 10. There is no further appeal from the Regional Ombudsman's decision. O.P. 866.1, section VI(B)(5).

The grievance regarding the April 5 picture was returned to Keen Mountain to process. Warden Davis, investigating the grievance, contacted KMCC Intel Officer regarding the incident and said that McGlothlin reported that his JPay account did "not reflect any rejection(s) on 4-5-18 or any date close to it." Ex. 1 at 2. Noting that there can be no notification of rejection if

there is no rejection, Warden Davis found Tory's grievance unfounded. *Id.* Regional Administrator Elam upheld the Warden's decision when Tory appealed to Level II, the final level of the grievance appeal process for Tory's grievance. *Id.* at 1. Elam also advised that "JPay (as a contracted vendor) is responsible for the notification process of their Secure Message service." *Id.*

On July 12, 2018, Tory alleges that Lakecia Ridley sent him an email with an attachment. On that same date, Tory was being transferred from Keen Mountain to River North Correctional Center. He was not able to access his JPay account during the transition and did not learn of the email and attachment until July 20. When he accessed the account, he received the email but not the attachment. On that same date he contacted JPay to find out what happened to the attachment. On July 29, JPay responded that "Our records show your email were (sic) sent and delivered successfully." Ex. 3, p. 2, to Pl's Mot. Am. Compl., ECF No. 43-1 at 17. Tory then filed an informal complaint asking why the attachment was discarded. McGlothlin responded on August 15 that, "You received the email, the attached with the email was discarded, due to containing swimwear." Ex. 4 to Pl's Mot. Am. Compl., ECF No. 43-1 at 18. Tory signed and submitted his grievance about this picture on August 22, 2018, but the grievance was rejected at intake as untimely. On appeal, the Regional Ombudsman upheld the intake decision. *Id.* at 19-20.

Contrary to the representations made during the grievance process[1] and in the defendants' Memorandum in Support of their First Motion for Summary Judgment,[2] defendants now state

---

[1] McGlothlin reported to Warden Davis that Tory's JPay account did "not reflect any rejection(s) on 4-5-18 or *any date close to it*." Ex. 1 at 2 (emphasis added).

[2] "Offender Tory received an email in April of 2018 on April 4, 2018 and it was approved." Def's Mem. Supp. Summ. J., ECF No. 105 at ¶ 28.

3

that an attachment was deleted from an email on April 4, 2018, to Tory from his sister, because the attachment was an image of a woman in a bathing suit or lingerie. Def's Mem. Supp. 2nd Mot. Summ. J., ECF No. 163 at ¶ 19.

## II. CLAIMS

Tory raises the following claims in this suit:

1. Defendants' policy prohibiting electronic receipt of semi-nude images (defined to include images of women in bathing suits) violates the First Amendment on its face.
2. Defendants' policy prohibiting electronic receipt of semi-nude images (defined to include images of women in bathing suits) violated the First Amendment as applied to Mr. Tory in the incidents involved in this lawsuit.
3. Defendants violated Tory's due process rights by failing to timely notify him each time an incoming electronic image was rejected.

## III. STANDARD OF REVIEW

A district court should grant summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In determining whether a genuine issue of material fact exists, the court must view the facts and all justifiable inferences in the light most favorable to the party opposing the motion for summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 565 n.1 (4th Cir. 2015). Credibility determinations and resolving differences in the evidence are jury functions, not appropriate for the court to usurp in ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As noted by the defendants in their opposition to plaintiff's motion, plaintiff's motion for summary judgment appears to be based entirely upon a misunderstanding of the Fourth Circuit's remand opinion in this case. The appellate court did not rule that the facts conclusively supported Tory's claims as a matter of law. Rather, the court ruled that the record contained conflicting versions of the facts regarding exhaustion and whether the defendants had rejected a photograph sent on or about April 5, 2018. Because of these facts, summary judgment on those issues was not appropriate. *Tory v. Davis*, No. 21-6649, slip op. at *6 (4th Cir. Dec. 15, 2022). The court further noted that "We express no opinion as to the underlying merits of Tory's constitutional claims." *Id.* at *6 fn*. The Fourth Circuit opinion states quite clearly that it remanded the case for resolution of the factual conflicts, not for summary judgment to be awarded to the plaintiff. Plaintiff's motion for summary judgment will be denied.[3]

### V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. The Facial Constitutionality of O.P. 803.1**

Operating Procedure 803.1, entitled *Offender Correspondence*, provides the VDOC procedure for handling and processing all types of correspondence to and from inmates housed in the Virginia Department of Corrections (VDOC). The procedures are designed to respect an inmate's First Amendment right to receive correspondence while enabling corrections officers to maintain security, discipline, and good order in the facility. Robinson Aff't, ¶ 5, Nov. 16, 2023, ECF No. 163-1.

---

[3] Plaintiff's motion for summary judgment also requested a pretrial conference and appointment of counsel. Pretrial conferences are scheduled once the matter has been set for a trial date. The court previously denied Tory's earlier motion for counsel (*see* ECF No. 55). Those motions will be denied without prejudice at this time.

VDOC officials determined through their professional experience that allowing offenders to access sexually explicit and nude publications undermined efforts to rehabilitate offenders (especially sex offenders) and led to disruptive activities (assaults, fights, and sexual harassment) that threaten the security and safety of staff and other inmates. *Id.* at ¶ 7. Section VI(C)(9) of the O.P. identifies types of photographs that an inmate is restricted from receiving. As relevant to this case, section VI(C)(9)(b) states that:

> Nude or semi-nude personal photographs or personal pictures (including pictures printed on standard weight printer paper) of any person are prohibited. Semi-nude shall include but is not limited to persons in diapers, underwear, lingerie, or swimwear.

O.P. 803.1, section VI(C)(9)(b). The VDOC distinguishes between personal photographs/pictures and commercially distributed photographs. Commercially distributed photographs are defined as "printed images that are produced for public distribution and are purchased through a vendor that provides mail order service to the public." O.P. 803.1, section III. Commercially distributed photographs are treated as publications, and different (less restrictive) rules apply, set forth in O.P. 803.2, *Incoming Publications*. According to the Chief of Corrections Operations, commercially distributed semi-nude photographs do not create the same security risks as semi-nude pictures of a personal nature, because pictures of persons known to and possibly intimate with the inmate arouse stronger emotions. Robinson Aff't, ¶¶ 14-16.

Because incoming postal mail is inspected upon receipt, and mailroom personnel can determine that commercially distributed photographs were sent directly from the vendor, there is no difficulty distinguishing between commercially distributed photographs and personal photographs in postal mail. With electronic messaging, however, VDOC cannot determine the origin of attached photographs. *Id.* at ¶ 17. For this reason, O.P. 803.1 treats all electronic

images as personal photographs.  Section VIII of the O.P. details the procedures applicable to secure messaging.  As relevant to this case:

> All pictures and photographs sent to offenders through secure messaging will be treated as personal and must comply with the requirements governing content established in this operating procedure for personal pictures and photographs to include prohibition of nude or semi-nude personal photographs or pictures of any person.  Semi-nude shall include but is not limited to persons in diapers, underwear, lingerie, or swimwear.

O.P. 803.1, sec. VIII(A)(3).

All incoming general mail is opened and inspected by prison staff.  O.P. 803.1, section VI(E).  Section VIII explains that secure messages and attachments are subject to the same inspection.  In particular:

> Messages and attachments that do not comply with the content requirements of this procedure will be returned to the sender.
>
> a. Notification that the message and/or attachment were censored and returned to the sender as well as the reason for the return will be provided electronically to the offender on their media device.
>
> b. Offenders may appeal the return of their secure messages by submitting an Informal Complaint 866_F3 through the *Offender Grievance Procedure* in accordance with Operating Procedure 866.1, *Offender Grievance Procedure*.

O.P. 803.1, sec. VIII(C)(6)(a)-(b).

Tory contends that the secure messaging policy, excluding semi-nude photographs sent by email, violates the First Amendment on its face.  Earlier court decisions reviewing this policy do not support Tory's claim.  Imprisonment does not automatically deprive a prisoner of his constitutional rights, including rights under the First Amendment.  *Beard v. Banks*, 548 U.S. 521, 528 (2006).  However, those First Amendment rights are limited by the legitimate penological concerns of the corrections system.  *Pell v. Procunier*, 417 U.S. 817. 822 (1974).  When a prison

regulation impinges on an inmate's constitutional rights, the regulation will be upheld "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The Court in *Turner* noted that several factors must be considered in deciding if a prison regulation infringing constitutional rights is reasonable: (1) whether there is a valid, rational relationship between the prison regulation and the legitimate governmental image put forward to justify it; (2) whether alternative means of exercising the right are available to inmates; (3) the impact of requiring greater accommodation of the asserted constitutional right on guards, other inmates, and allocation of prison resources; and (4) the availability or absence of ready alternatives to the prison regulation. *Id.* at 89–90. In weighing these factors, courts must give great deference to the decisions of corrections officials who are tasked with operating the prisons. *Id.* Courts in this jurisdiction, thoroughly applying the *Turner* factors, have upheld the facial validity of O.P. 803.1, section VIII, Secure Messaging. *E.g., Hoglan v. Robinson*, 7:16cv00595, 2022 WL 4798248, at *12 (W.D. Va. Sept. 30, 2022), *aff'd de novo by* No. 22-7265, 2024 WL 688103 (4th Cir. Feb. 20, 2024) (unpublished). The court in *Hoglan* also found it reasonable for the regulation to treat all email photographs as personal. *Id.* at *9. *See also Canada v. Ray*, No. 7:08cv00219, 2011 WL 565611, at *6 (W.D. Va. Feb. 9, 2011) (finding no constitutional violation in treating personal semi-nude photographs differently from commercial semi-nude photographs).

Based on the precedent of this court and the Fourth Circuit Court of Appeals, I find that O.P. 803.1 is constitutional on its face. Accordingly, I will grant the defendants' motion for summary judgment on this claim.

**B. Constitutionality as Applied**

8

In considering a challenge to a policy as applied, the court considers whether rejection of the three specific images involved in this suit is reasonably related to a legitimate penological objective. *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015). Defendants have provided black-and-white photocopies of the three photos, under seal, which are currently visible only in very small images, and the court cannot resolve contested factual issues based upon those photocopies. Therefore, I will deny summary judgment on this claim.

## C. Due Process Violations

To state a claim for violation of due process, the plaintiff must (1) identify a protected liberty or property interest and (2) show deprivation of that interest without due process of law. *Prieto v. Clarke,* 780 F.3d 245, 248 (4th Cir. 2015). A prisoner's interest in receiving uncensored communication, grounded in the First Amendment, has long been recognized as a protected liberty interest. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Accordingly, the decision to censor or withhold a communication must be accompanied by minimum procedural safeguards. *Id.* This requirement applies to all forms of communication, whether letter or email. *Bonner v. Outlaw*, 552 F.3d 673, 676–77 (8th Cir. 2009). The minimum due process required includes notice of the rejection of the communication and a reasonable opportunity to protest the decision. *Moyler v. Fannin*, No. 7:20cv00028, 2023 WL 2541131, at *7 (W.D. Va. March 16, 2023).

By alleging that the three photos were either deleted or returned to the sender on separate occasions and that he was never timely notified that they had been rejected, deleted, or returned, Tory has stated a valid due process claim. *Id.* at *8. Notice is required *each time* a communication is withheld, censored, or rejected. *Procunier*, 416 U.S. at 417; *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 976 (11th Cir. 2018). Without *timely* notice of

9

the action, accompanied by the information necessary to file a proper and timely grievance, an inmate loses the opportunity to protest the decision, which is also required for due process. *Moyler*, 2023 WL 2541131 at *8. As noted by the Fourth Circuit Court of Appeals:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . . Adequate notice is necessary because the right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . acquiesce or contest.

*Todman v. Mayor and City Council of Baltimore*, 631 F. Supp. 3d 314, 328–29 (D. Md. 2022), *aff'd*, ___ F.4th ___, 2024 WL 2887403 (4th Cir. 2024) (internal quotations and citations omitted).

Having found that Tory has properly alleged a violation of due process, the question becomes which defendants might be held liable based upon Tory's allegations. Tory argues that defendants Clarke and Robinson are liable because they were responsible for implementing and enforcing the Secure Messaging Operating Procedures. One part of that procedure is to have JPay notify inmates when the state has censored, rejected, or returned email and/or attachments. The prison employees, as state actors, are responsible for deciding what correspondence to reject or censor. As state actors, the Fourteenth Amendment prohibits them from depriving inmates of their liberty interest in communication without due process. Notice is part of that required due process, as discussed above. That the state has delegated responsibility for notice to a third-party contractor like JPay does not relieve them of the duty to provide notice and an opportunity to be heard. A state is responsible for a private actor's conduct when the state "has outsourced or otherwise delegated certain of its duties to a private entity, thereby rendering the acts performed

10

under those delegated obligations 'under color of state law.'" *Peltier v. Charter Day School, Inc.*, 37 F.4th 104, 116 (4th Cir. 2022).

Defendants Mitchell, McGlothlin, and Howard were identified by the defendants as the persons who had access to inmate JPay accounts to screen and, if appropriate, reject email messages and/or attachments. *See* ECF No. 57. The defendants identified McGlothlin as the person who removed the photographs on March 8 and July 12, 2018, but they have not identified which of the three removed the photo collage on April 4. McGlothlin and other defendants assert that JPay is responsible for sending the notification of rejection when an email or attachment is disallowed. There has been no assertion that McGlothlin, Mitchell, or Howard ever notified Tory of the photographs removed, nor have defendants alleged that JPay notified him; they state only that it is JPay's responsibility to notify inmates after prison staff chooses to reject or return electronic correspondence and attachments.

Throughout the informal complaint and grievance process, Mitchell, Davis, and Elam focused on the reasons for rejecting the photographs. Their only comments on notice were: "Policy mandates you receive electronic notification on your media device regarding the censorship of the attachment," per Lt. Mitchell (Compl's Exs at 10, ECF 1-1); "Currently KMCC is not responsible for the electronic notifications of rejections; it is the understanding that JPay is to provide the notification. This grievance [April 5 only] was logged; therefore, you were not denied your due process," from Warden Davis (*Id.* at 2); finally, from Elam, "JPay (as a contracted vendor) is responsible for the notification process of their Secure Message Service." *Id.* at 1. Those responses utterly failed to address the thrust of Tory's grievance, that he did not receive any notice. The minimum requirements of due process are that an inmate receive timely

11

notice of the deprivation of his correspondence and an opportunity to object to it. The requirement is actual notice, not a procedure on paper that says, "you should get notice."

For these reasons, defendants are not entitled to summary judgment on the due process claims against them in their individual capacities.

### D. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person. *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014). Clearly established law has given prison officials fair warning since the 1974 decision in *Procunier* that failing to notify an inmate that correspondence was being withheld is unconstitutional. 416 U.S. 417. Numerous subsequent decisions have given fair warning that *Procunier* applies to more than just letters. *See Moyler*, 2023 WL 2541131 at *11 and cases cited therein. That defendants may have believed that JPay was sending the required notice is irrelevant to the qualified immunity analysis. *Id.* Whether the defendants should be protected from liability based upon an "objectively reasonable" mistake of fact cannot be determined without a hearing on the merits.

### E. Official Capacity Claims

As the defendants point out in their motion, the Eleventh Amendment to the Constitution bars suits for damages against state officials in their official capacity under § 1983. *Id.* at 8. Therefore, the court will grant the defendants' motion to dismiss Tory's claims for damages against the defendants in their official capacities.

The Supreme Court has recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective injunctive relief against ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908).  Not all of the injunctive relief Tory requests could be considered "prospective."  Prospective equitable relief is forward-looking, dealing with the future.  Injunctive relief to undo past conduct is not available.  However, Tory also has requested injunctive relief to prevent future failures of required notice.  Whether he might be entitled to such relief is a factual question that must be developed in this case.

## VI.  CONCLUSION

For the reasons stated, I will deny the plaintiff's motion for summary judgment.  I will grant in part and deny in part the defendants' motion for summary judgment.  An appropriate order will be entered this day.

Enter:  July 5, 2024

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge